**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **JOE A. COOK** | § | |
| **TDCJ-CID #1427038** | § | |
| | § | |
| **VS.** | § | **C.A. NO. C-08-379** |
| | § | |
| **MAJOR AURELIO AMBRIZ, ET AL.** | § | |

**MEMORANDUM AND RECOMMENDATION TO DISMISS
AND TO DENY INJUNCTIVE RELIEF**

In this civil action, plaintiff, a Texas state prisoner proceeding *pro se*, claims that

prison officials are violating his constitutional rights because they refuse to house him in

safe-keeping or transfer him off the McConnell Unit, despite his allegations that he has been

threatened by gang members and believes his life is in danger (D.E. 1). Plaintiff is also

requesting a preliminary injunction (D.E. 30, 31).

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321

(1996), any prisoner action brought under federal law must be dismissed if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28

U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether

he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273,

274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per

curiam). Plaintiff's *pro se* complaint must be read indulgently, see Haines v. Kerner, 404

U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Applying these standards, it is respectfully recommended that plaintiff's petition be dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), and that his request for a preliminary injunction be denied.

## I.      Jurisdiction.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.     Background facts and plaintiff's allegations.

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Divisions ("TDCJ-CID"), and is currently incarcerated at the McConnell Unit in Beeville, Texas.  He filed this lawsuit on November 6, 2008, and named the following individuals as defendants: (1) Major Aurelio Ambriz; (2) Major Matt Barber; (3) Warden Ernest Gutierrez, Jr.; (4) Warden Oscar Mendoza; and (5) TDCJ-CID Director Brad Livingston.  (D.E. 1).  A Spears[1] hearing was conducted on April 7, 2009.  At the hearing, plaintiff voluntarily moved to dismiss Warden Mendoza from this lawsuit.

On April 22, 2009, plaintiff filed a time-line detailing the events that form the basis of his claims.  (D.E. 36).  The following allegations were made in plaintiff's original

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

complaint (D.E. 1), time-line (D.E. 36), at the hearing on plaintiff's request for a preliminary injunction held January 14, 2009, or at the Spears hearing on April 7, 2009.

On an unidentified date in the summer of 2007, plaintiff was in the recreation yard at the Robertson Unit, talking to another inmate about how it would be simple to "leave" the Unit.  Plaintiff never used the word "escape."  Without plaintiff realizing it, two members of the Aryan Brotherhood ("AB"), a Security Threat Group ("S.T.G."), eavesdropped on his conversation.  A few weeks later, the two offenders who had previously overheard his conversation approached him in the recreation yard and asked him about the details to escape the Robertson Unit.  They threatened to hurt him if he would not tell, so he outlined how he thought it was possible.

Plaintiff suspected that the inmates were serious about escaping by Christmas, 2007, so the weekend of Thanksgiving, he sent a note to the Unit Master relating that he had information about a planned escape.  The Monday following Thanksgiving, plaintiff identified the two inmates, and thereafter, he was placed in pre-hearing detention ("PHD") for his own safety.  It was decided that plaintiff should be transferred off the Robertson Unit, and on February 19, 2008, plaintiff was transferred to the McConnell Unit.

At the McConnell Unit, plaintiff was initially housed in a transit cell; however, the first week of March, 2008, he was moved to 4-Building, F-pod.  During the end of March, a "chief" with the AB told plaintiff that he knew what had happened at the Robertson Unit, and he pressured him for information about how to "escape" prison, and threaten to hurt him

if he did not talk.  To protect himself, plaintiff began telling the AB chief about how an inmate could escape.   Plaintiff described the details to the AB chief through June, 2008.

In June, 2008, a Hispanic inmate began talking about escaping.  Plaintiff sent a note to the Office of the Inspector General ("OIG") advising officials of the Hispanic inmate's escape plot.  In July 2008, plaintiff sent a second note to the OIG informing it about a potential escape plot by AB members.  Plaintiff also sent a letter regarding the escape plots to the undersigned magistrate judge, believing that the undersigned would forward the information to the appropriate McConnell Unit officials.

On August 22, 2008, defendants Major Ambriz and Major Barber called plaintiff to their office and began questioning him about the escape plans.  Plaintiff stated that it involved the AB, but he would not supply additional information without assurances that he would be protected.   Major Ambriz then ordered that plaintiff be placed in PHD in Eleven Building.  Plaintiff was upset about being placed in PHD because he believed it signaled to other inmates that he had "snitched" on the AB chief.

On September 22, 2008, an AB member passed plaintiff a note saying that he was "dead meat."  That night, plaintiff sent a note to OIG telling it about the threat.

The next day, plaintiff sent OIG a second note stating that he had a plan to deal with his "dilemma."  An OIG investigator, John Davis, came to his cell, and plaintiff proposed that he fake a heart attack and then be transferred.  Instead, the message was communicated to McConnell Unit officials that plaintiff planned to commit suicide. Warden Mendoza then

sent a member of the psychiatric staff to check on plaintiff's mental state.  The mental health representative stated that a psych transfer might be appropriate.

On October 2, 2008, plaintiff was sent to the Jester Unit.  However, it was determined that he was not suicidal, and he was returned to the McConnell Unit on October 13, and placed in a transit cell.

In November, 2008, an Offender Protection Investigation (OPI) was completed, and plaintiff appeared before a Unit Classification Committee ("UCC") on his transfer request. Warden Gutierrez was head of the UCC, and, after finding that plaintiff's complaints of threats were uncorroborated, the UCC denied plaintiff's request for a transfer or protective custody, and ordered that he be placed in the general population.  Plaintiff refused this housing assignment.  Thereafter, on December 16, 2008, plaintiff was forced by security officers to move to a 2-man cell in general population.  Two AB members came up and said they were going to kill him.  One inmate plaintiff knew as "Crazy George," and he did not know the other.  Plaintiff filed a life in danger ("LID") complaint, but claims it was not investigated.

Plaintiff filed this lawsuit on December 17, 2008, alleging failure to protect in violation of his Eighth Amendment rights.   On January 14, 2009, a hearing was held concerning plaintiff's motion for a preliminary injunction to  be transferred to federal custody.   Thereafter, Lieutenant Adame Dees opened an OPI, and plaintiff was put back in 11-Building administrative segregation for his protection.  On February 19, 2009, plaintiff was returned to SCR ("special cell restriction") for thirty days.

Plaintiff completed this SCR on March 20, 2008.  On that date, inmate Frank Trinibad was assigned to share plaintiff's cell.  Also at this time, plaintiff had to go to the dining hall to get his meals.

On March 28 or 29, 2009, while at the chow hall, plaintiff alleges he was stabbed in his right, lower back.  Plaintiff ran and told the officer on duty, Lieutenant Williford, and showed him the blood on his shirt.  Lieutenant Williford said there was nothing he could do at the moment because there were no cells available, but he instructed plaintiff to go back to his cell and pack, and he would see what he could do.

On April 3, 2009, plaintiff was moved to another cell because his bottom bunk restriction expired.  On April 6, 2009, plaintiff was returned to 11-Building due to the scheduled Spears hearing in this case, and on April 10, 2009 plaintiff was placed in a one man cell, but expected to soon be released to general population.

Plaintiff is seeking a new identity, including plastic surgery, a new name, and a new social security number, so that he will no longer be recognizable by AB members.   In addition, he seeks monetary damages.  In his request for a preliminary injunction, he requests that he not be returned to general population (D.E. 30, 31).

**III.    Discussion.**

**A.    Legal Standard.**

It is well established that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state

6

law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (citations omitted); <u>see also</u> <u>Biliski v. Harborth</u>, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  <u>Oliver v. Scott</u>, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted).  The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed.  <u>Id.</u> (citation omitted).

## B.    Dismissal of Warden Oscar Mendoza.

Plaintiff orally moved at the <u>Spears</u> hearing to dismiss his claims against Warden Mendoza.  Because this defendant has not been served, and no effort was expended by Warden Mendoza in defending against plaintiff's claims, it is respectfully recommended that the Court grant plaintiff's motion for voluntary dismissal of this defendant.

## C.    Failure to protect.

Plaintiff claims that Major Ambriz and Major Barber placed his life in danger when, on August 22, 2008, they questioned him about the pending plans to escape, and then sent him to PHD.   He claims that sending him to PHD following  his questioning signaled to other inmates that he had "snitched," thus putting his life in danger.  He claims that Warden Gutierrez violated his Eighth Amendment rights because he ratified the UCC's denial of his request for safe-keeping or a transfer.  Finally, plaintiff is suing Brad Livingston because he is "the overall person responsible for inmate safety."

 Prison officials have a duty to protect prisoners from violence at the hand of other prisoners.  <u>Cantu v. Jones</u>, 293 F.3d 839, 844 (5th Cir. 2002) (citing <u>Farmer v. Brennan</u>, 511

7

U.S. 825, 832 (1994)). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Cantu, 293 F.3d at 844 (citing Farmer, 511 at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835.

In addition, to state a cause of action under § 1983, plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995); Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). A supervisory official may not be held liable under § 1983 based on a theory of *respondeat superior* or vicarious liability. Reimer v. Smith, 663 F.2d 1316, 1323 (5th Cir. 1981). A supervisory defendant must be either personally involved in the incidents underlying the claim "or there must be a causal connection between an act of the [supervisor] and the constitutional violation sought to be redressed." Harvey v. Andrist, 754 F.2d 569, 572 (5th Cir. 1985) (citations omitted); also see Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir. 1986) (usually a failure to supervise imposes § 1983 liability only where there is a history of widespread deprivations).

Finally, regarding prisoner safety and classification, the Fifth Circuit has repeatedly affirmed that "[p]rison officials should be accorded the widest possible deference" in classifying prisoners' custodial status as necessary "to maintain security and preserve internal order." Hernandez v. Velasquez, 522 F.3d 556, at 562 (5th Cir. 2008) (citation omitted).

### 1.     *Major Ambriz and Major Barber.*

Plaintiff claims that on August 22, 2008, these defendants called him to their office and questioned him about pending escape plans.  Plaintiff told them only that one plan involved the AB, and he would not give additional details unless they agreed to protect him. He claims that Major Ambriz then screamed at him for half-an-hour, and then ordered that he be placed in PHD cell in 11-Building.  Plaintiff contends that his placement in PHD suggested that he had "snitched," making him more vulnerable to attack.  He claims that the officials should have taken the same action as the Robertson Unit officials, who sent him back to his cell "with a story" about why he had been called to the Major's office.  However, plaintiff acknowledges that this action would not have been in conformity with TDCJ policy and procedures.

Plaintiff's complaint is that he was not immediately transferred off the McConnell Unit or given safe-keeping status.  However, he fails to provide any evidence to suggest that Major Ambriz or Major Barber were deliberately indifferent to his safety.  First, it was plaintiff who contacted prison authorities about the pending escape plans.  He admits that he sent letters to the OIG telling officials that he had information and wanted to talk; that is, he was not sought out by officials and forced to testify.  Thereafter, once he was called in for questioning, he admits that he would not tell all of the information he had until he was promised protection.   However, the only protection that was satisfactory to plaintiff was safe-keeping status or a transfer.  Despite his refusing to tell the Majors all of the information he had, they placed him in PHD which provided a single-man cell and meals served therein.

That is, these defendants took steps to protect him by placing him in PHD.  The fact that plaintiff disagrees with defendants' actions or thinks they could have done more to protect him does not equate with deliberate indifference.  Plaintiff fails to establish that he was "incarcerated under conditions posing a substantial risk of serious harm" or that the defendants' failure to transfer  him to a different prison equates with being "deliberately indifferent to his need for protection."  Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995). Accordingly, it is respectfully recommended that plaintiff's claims against Major Ambriz and Major Barber be dismissed for failure to state a claim and as frivolous.  28 U.S.C. §1915(e)(2) and § 1915A(b)(1).

> ### 2.     *Warden Gutierrez.*

Plaintiff claims that Warden Gutierrez was deliberately indifferent to his safety because he upheld a UCC decision denying him safe-keeping or a transfer.  He relates that in November 2008, an OPI was opened, and thereafter, a UCC hearing was held.  Based on the OPI, the UCC denied plaintiff's request for safe-keeping status or a transfer.

Plaintiff alleges that Warden Gutierrez approved the UCC's denial of safe-keeping or a transfer.  However, as discussed at the Spears hearing, a warden does not have the authority to review and set-aside  a UCC decision.  Review of a UCC ruling is made by the State Classification Committee.  Indeed, plaintiff offers no information to suggest that Warden Gutierrez had any authority over his classification.  Moreover, there is no evidence that plaintiff appealed the UCC decision. Further, even if he had appealed, Warden Gutierrez would have had no input in the decision.  As such, plaintiff cannot establish that Warden

10

Gutierrez had any personal involvement concerning plaintiff's classification or placement, and it is recommended that his claim against this defendant be denied.

### 3.    Brad Livingston.

Plaintiff claims that Director Livingston is "the overall person responsible for inmate safety."  This allegation attempts to hold Director Livingston liable on a theory of *respondeat superior*, which is not available under § 1983.  <u>Reimer</u>, 663 F.2d at  1323 (5th Cir. 1981). In addition, plaintiff fails to claim that Livingston was personally involved in any decision concerning his classification or housing.  Thus, plaintiff fails to establish a causal connection between Mr. Livingston's actions and the alleged constitutional violations.  <u>Douthit v. Jones</u>, 641 F.2d 345, 346 (5th Cir. 1981). Thus, it is respectfully recommended that plaintiff's claims against Director Livingston be dismissed.

## IV.    Injunctive Relief

### A.    Background

A recommendation to deny plaintiff's earlier requests for injunctive relief was entered on January 26, 2009 (D.E. 19).  The District Court has not yet ruled on this motion.  Pending are plaintiff's renewed requests for a preliminary injunction (D.E. 30, 31) requesting that he not be returned to general population.  The Attorney General was ordered to file, and did file a response June 8, 2009 (D.E. 41).

Plaintiff claims he was stabbed in the lower back by another inmate on March 28 or 29, 2009.  He did not see who stabbed him, and he claims he reported this stabbing to the Lieutenant on duty, but nothing was done.  During a shake down on April 6, 2009, plaintiff

told Lt. Dees, who opened an offender protection investigation (OPI).  Neither Lt. Dees nor the medical nurse assigned to examine plaintiff observed any marks where plaintiff said he was stabbed.  The lieutenant on duty March 29, 2009, submitted a statement that plaintiff did not tell him that he had been stabbed.  Unable to verify that plaintiff had been stabbed, his request for protection was denied (D.E. 41, Exh. A).

Coincidentally, plaintiff complained that he had been threatened on March 24, 2009.  At that time plaintiff was observed to have a small cut on his back, and plaintiff claimed not to know how he had been cut or who had cut him.  Because plaintiff failed to provide any new information, his request for protection was denied by Major Barber on March 27, 2009 (D.E. 41, Exh. A).

**B.     Legal Standard and Discussion.**

To obtain a preliminary injunction under Fed. R. Civ. P. 65(a), the applicant must demonstrate: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest."  Affiliated Professional Home Health Care Agency v. Shalala, 164 F.3d 282, 285 (5th Cir. 1999).  Injunctive relief is an extraordinary remedy which requires the applicant to unequivocally show the need for its issuance.  See Valley v. Rapides Parish School Bd., 118 F.3d 1047, 1050 (5th Cir. 1997).  Plaintiff must carry the burden as to all four elements before a preliminary injunction may be considered.  United States v. Jefferson County, 720 F.2d 1511, 1519 (5th Cir. 1983).

Plaintiff's motion fails to warrant such an extraordinary remedy.  He cannot prevail on the four elements required for a preliminary injunction.  First, plaintiff has not demonstrated a likelihood of success on the merits of his claims.  He is pursuing an Eighth Amendment claim for deliberate indifference to his safety.  As recommended earlier, plaintiff has failed to demonstrate that the defendants named in this lawsuit have failed to take reasonable measures to protect him.  Each time plaintiff has complained of a threat or an assault, an investigation has been opened.  Plaintiff has been unable to demonstrate to officials that he is at risk of harm.  Though plaintiff disagrees with the assessment of officials that he is in danger, there is no proof that officials have unreasonably responded to his complaints.  To date plaintiff has not been harmed.  Plaintiff has only his personal belief to support his allegation that he is currently at risk of harm.

Plaintiff also cannot show that the public interest would be served by interfering with the security decisions made by TDCJ staff after conducting an investigation into plaintiff's allegations.  Federal courts are reluctant to interfere in the internal affairs of local jails or state prisons.  See Kahey v. Jones, 836 F.2d 948, 950 (5th Cir. 1988) (federal courts defer to prison administrators concerning day-to-day operations).  Moreover, interference with prison operations would not be in the public's interest and it would be a waste of judicial resources to micro-manage the prison's unit classification and security decisions.

## V.    Recommendation.

Plaintiff fails to establish that any of the named defendants was deliberately indifferent to his health and safety by refusing to place him in safe-keeping or transfer him

13

off the McConnell Unit.  Indeed, when he was finally "stabbed" by an inmate on March 28, 2009,[2] he had no contact with any of the named defendants thereafter.  Plaintiff testified that, since his arrival at the McConnell Unit on February 19, 2008, at least six Offender Protection Investigations have been performed by persons other than defendants, with none of those investigations recommending safe-keeping status or transfer.  He has appeared numerous times before UCC panels, but not one committee recommended safe-keeping or transfer. Major Ambriz and Major Barber did attempt to protect plaintiff by placing him in PHD after questioning him, but according to plaintiff this placement actually placed him in harm's way instead of protecting him.  In addition, he was often placed in SCR for his protection.  Thus, plaintiff fails to establish that any of these defendants was aware of a serious risk to his safety and then ignored that risk.  As such, he fails to state a cognizable claim, and it is respectfully recommended that his claims be dismissed with prejudice for failure to state a claim pursuant to  28 U.S.C. § §1915(e)(2)(B), and 1915A(b)(1).

It is further recommended that plaintiff's requests for injunctive relief (D.E. 30, 31) be denied.

Respectfully submitted this 11th day of June, 2009.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

---

[2] Plaintiff related that his shirt was ripped and that there was blood on it; however, he did not go to medical, but returned to his cell.

14

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).